**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MARY PRZYTULA and BRAD BREDE,** individually and on behalf of all others similarly situated,<br><br>      **Plaintiffs,**<br><br>        **v.**<br><br>**BED BATH & BEYOND INC.,**<br><br>      **Defendant.** | **No. 1:17-cv-05124 (MTM)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF SETTLEMENT,
<u>SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................................1

SUMMARY OF THE SETTLEMENT TERMS ........................................................................2

    I.   The Settlement Fund and Eligible Employees ...................................................................2

    II.  Claims Procedure, Releases, and Allocation Formula .......................................................3

    III. Service Awards ...........................................................................................................4

    IV. Settlement Claims Administration ................................................................................4

    V. Attorneys' Fees and Expenses .....................................................................................4

ARGUMENT ......................................................................................................................4

    I.   A One-Step Approval Process Is Appropriate ..................................................................4

    II.  The Settlement Is Fair and Reasonable and Should Be Approved .....................................6

    III. The Service Awards Should Be Approved as Fair and Reasonable ...................................8

    IV. The Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable ................10

        A.  The Court Should Use the Percentage of the Fund Method .......................................10

        B.  The Benefits Conferred Upon the Class Justify the Fee Award .................................11

        C.  An Analysis of the Market For Legal Services Supports Plaintiffs' Request.............12

            1.     Plaintiffs' Request for One-Third of the Settlement Is the Normal Rate of Compensation in the Northern District of Illinois Market.......................12

            2.     The Risk of Nonpayment Was Significant .................................................15

CONCLUSION....................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                          **PAGE(S)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ..............................................................8

*Bainter v. Akram Investments, LLC*,
2018 WL 4943884 (N.D. Ill. Oct. 9, 2018)...............................................................5

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................................................5, 7

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014)................................................................9

*Blum v. Merrill Lynch & Co., Inc.*,
2017 WL 8784449 (S.D.N.Y. May 15, 2017) ...........................................................5

*Bozak v. Fedex Ground Package Sys., Inc.*,
2014 WL 3778211 (D. Conn. July 31, 2014) ............................................................5

*Brewer v. Molina Healthcare, Inc.*,
2018 WL 2966956 (N.D. Ill. June 12, 2018) ............................................................5

*Briggs v. PNC Fin. Servs. Grp. Inc.*,
2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ...............................................5, 13, 14

*Burkholder v. City of Ft. Wayne*,
750 F. Supp. 2d 990 (N.D. Ind. 2010) ..............................................................6, 13

*Butler v. Am. Cable & Tel., LLC*,
2011 WL 4729789 (N.D. Ill. Oct. 6, 2011)...............................................................6

*Butler v. Am. Cable & Tel., LLC*,
2012 WL 13123576 (N.D. Ill. Jan. 23, 2012) ...................................................10, 14

*Campbell v. Advantage Sales & Mktg. LLC*,
2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ..................................................5, 10, 14

*Castillo v. Noodles & Co.*,
2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) ............................................................8

*Chesemore v. Alliance Holdings, Inc.*,
2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) ..........................................................8

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .......................................................................8

*Dawson v. Pastrick*,
   600 F.2d 70 (7th Cir. 1979) .........................................................................6

*Donovan v. Estate of Frank E. Fitzsimmons*,
   778 F.2d 298 (7th Cir. 1985) .....................................................................12

*Espenscheid v. DirectSat USA, LLC*,
   688 F.3d 872 (7th Cir. 2012) .......................................................................8

*Espenscheid v. DirectSat USA, LLC*,
   705 F.3d 770 (7th Cir. 2013) .......................................................................5

*Florin v. Nationsbank of Ga., N.A.*,
   34 F.3d 560 (7th Cir. 1994) .......................................................................10

*Follansbee v. Discover Fin. Servs., Inc.*,
   2000 WL 804690 (N.D. Ill. June 21, 2000) ................................................8

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) .....................................................................14

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013) .......................................................................................5

*Goldsmith v. Tech. Solutions Co.*,
   1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ...........................................14

*Gromek v. Big Lots, Inc.*,
   2010 WL 5313792 (N.D. Ill. Dec. 17, 2010) ..............................................7

*Guippone v. BH S & B Holdings, LLC*,
   2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) .............................................9

*Hawkins v. Securitas Sec. Servs. USA, Inc.*,
   280 F.R.D. 388 (N.D. Ill. 2011) .................................................................8

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   792 F. Supp. 2d 1028 (N.D. Ill. 2011) .....................................................11

*In re Dairy Farmers of Am., Inc.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ....................................................13, 14

*In re Synthroid Mktg. Litig.*,
    264 F.3d 712 (7th Cir. 2001) ................................................................. 12-13

*In re Synthroid Mktg. Litig.*,
    325 F.3d 974 (7th Cir. 2003) ................................................. 10-11, 13

*Jackson v. Go-Tane Servs., Inc.*,
    2001 WL 826867 (N.D. Ill. July 18, 2001)........................................7

*Kaplan v. Houlihan Smith & Co.*,
    2014 WL 2808801 (N.D. Ill. June 20, 2014) ..................................14

*Koszyk v. Country Fin.*,
    2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ...............................*Passim*

*Long v. HSBC USA Inc.*,
    2015 WL 5444651 (S.D.N.Y Sept. 22, 2015)........................................11

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) ........................................................6

*Massiah v. MetroPlus Health Plan, Inc.*,
    2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)............................................8

*Matter of Cont'l Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) .........................................................15

*McDaniel v. Qwest Commc'ns Corp.*,
    2011 WL 13257336 (N.D. Ill. Aug. 29, 2011) ..................................12

*McKenna v. Champion Int'l Corp.*,
    747 F.2d 1211 (8th Cir. 1984) ........................................................5

*N.P. v. Standard Innovation Corp.*,
    2017 WL 10544061 (N.D. Ill. July 25, 2017)........................................12

*Ottaviano v. Home Depot, Inc., USA*,
    701 F. Supp. 2d 1005 (N.D. Ill. 2010) ...........................................7

*Pierce v. Visteon Corp.*,
    791 F.3d 782 (7th Cir. 2015) ........................................................11

*Prena v. BMO Fin. Corp.*,
    2015 WL 2344949 (N.D. Ill. May 15, 2015)....................................5, 10

*Primax Recoveries, Inc. v. Sevilla*,
    324 F.3d 544 (7th Cir. 2003) ................................................................10

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ...............................................................11

*Reyes v. Altamarea Grp., LLC*,
    2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011)........................................10

*Roberts v. Apple Sauce, Inc.*,
    2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) ........................................5

*Rusin v. Chicago Tribune Co.*,
    2013 WL 12377129 (N.D. Ill. June 26, 2013) .......................................13

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................14

*Sewell v. Bovis Lend Lease, Inc.*,
    2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012)........................................14

*Singleton v. Domino's Pizza, LLC*,
    976 F. Supp. 2d 665 (D. Md. 2013) ........................................................9

*Summers v. UAL Corp. ESOP Comm.*,
    2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) ..........................................7

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) .................................................10, 12, 15

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ...............................................................12

*Urnikis-Negro v. American Family Prop. Servs.*,
    616 F.3d 665 (7th Cir. 2010) ...............................................................11

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ...............................................................14

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ...............................................................10

*Woods v. Club Cabaret, Inc.*,
    2017 WL 4054523 (C.D. Ill. May 17, 2017) .........................................14

*Woods v. N.Y. Life Ins. Co.*,
    686 F.2d 578 (7th Cir. 1982 .................................................................................5

*Zolkos v. Scriptfleet, Inc.*,
    2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ......................................................8

*Zolkos v. Scriptfleet, Inc.*,
    2015 WL 4275540 (N.D. Ill. Jul. 13, 2015) ............................................9, 10, 14

## STATUTES

Fair Labor Standards Act § 216(b) .........................................................................2

## INTRODUCTION

The Parties have resolved this wage-and-hour lawsuit on a collective-wide basis for $8,500,000 after discovery, motion practice, two private mediation sessions, and further negotiations. Plaintiffs respectfully request that the Court approve the Joint Stipulation of Settlement and Release ("Settlement Agreement") (Ex. 1 to the Swartz Decl.),[1] adopt the Proposed Order (Ex. A to the Settlement Agreement), and approve the Settlement Notice and Claim Form (Ex. B to the Settlement Agreement), the requested Service Awards, the requested attorneys' fees and expenses, and the Settlement Administrator's fees and costs. The Settlement satisfies all criteria for approval and provides good value to the approximately 3,150 workers.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are former employees of Defendant who worked as assistant store managers ("ASMs") at Defendant's retail stores throughout the United States. Swartz Decl. ¶ 6. Plaintiffs allege that Defendant misclassified them as exempt under the FLSA and various state laws and failed to pay them overtime compensation for working more than 40 hours per week. Defendant denies these allegations.

In a letter dated February 17, 2017, Plaintiffs' Counsel informed Defendant of Plaintiffs' allegations and of their intent to litigate if a pre-litigation settlement could not be reached. *Id.* ¶ 7. Defendant declined to negotiate. *Id.* Before initiating this action, Plaintiffs' Counsel thoroughly investigated and researched the claims and defenses, including various theories of liability, measures of damages, and certification issues. *Id.* ¶ 8. This included reviewing publicly available information and interviewing ASMs from several states. *Id.*

---

[1] Unless otherwise indicated, all exhibits are attached to the Swartz Decl., and all capitalized terms are defined in the Glossary of Terms (Ex. 2 to the Swartz Decl.) consistent with the definitions set forth in the Settlement Agreement.

On July 11, 2017, Plaintiffs filed their Complaint on behalf of ASMs nationwide under the FLSA and Illinois and New York state labor laws. *See* ECF No. 1. On November 7, 2017, Plaintiffs filed a motion for court-authorized notice pursuant to Section 216(b) of the FLSA. *See* ECF Nos. 2-3. As of January 9, 2018, the motion was fully briefed. *See* ECF Nos. 57-76, 78-79.

Meanwhile, the Parties engaged in discovery. Swartz Decl. ¶ 9. Defendant moved to compel certain depositions but the Court rejected this request. *See* ECF No. 77. Plaintiffs served discovery demands on October 13, 2017 and obtained and reviewed responsive information, including voluminous ESI. Swartz Decl. ¶ 9. The Parties engaged in approximately nine discovery meet and confers and attended several status conferences. *Id.*

In the spring of 2018, while Plaintiffs' 216(b) motion was pending, the parties agreed to attend private mediation with Michael D. Young, a well-regarded, experienced mediator on August 22, 2018. *Id.* ¶ 10. As part of the mediation process, Defendant produced additional, targeted class-wide discovery and data showing the number of potential class members in the job title, salaries, and weeks worked, which Plaintiffs' Counsel analyzed and to construct a damages model. *Id.* ¶ 11. The Parties also submitted detailed mediation statements. *Id.*

The August 22, 2018 mediation session did not resolve the case, but the parties agreed to continue negotiating with the mediator's assistance. *Id.* ¶ 12. After continued negotiations and a second mediation session on October 23, 2018, the parties reached an agreement in principle. *Id.* Thereafter, the parties finalized the terms of the Settlement, which were memorialized in formal Settlement Agreement on January 18, 2019. *Id.*

## SUMMARY OF THE SETTLEMENT TERMS

### I.     The Settlement Fund and Eligible Employees

The Settlement Agreement establishes a fund of $8,500,000.00 ("Fund") from which

Class Members may claim settlement awards.  The Fund covers any Court-approved Service Awards, attorneys' fees and expenses, Settlement Administrator's fees, payroll taxes, and class member awards.  Ex. 1 ¶¶ 1.12, 1.8, 3.1(i).

All current and former ASMs other than those ASMs who worked exclusively in New Jersey stores are Eligible Settlement Class Members.  *Id.* ¶¶ 1.9.[2]

## II.    <u>Claims Procedure, Releases, and Allocation Formula</u>

The parties negotiated a simple claims process with no barriers to participation.  The Settlement Administrator will mail a plain language notice and a simple claim form to all Eligible Settlement Class Members, informing them of the claims, the settlement terms, their individual settlement allocations, the release, and their right to participate.  *Id.* ¶ 2.7; *see id.* at Ex. B (Settlement Notice and Claim Form).  Eligible Settlement Class Members will have 60 days to submit claim forms (45 days after a re-mailing).  *Id.* ¶ 1.4.  The Settlement Administrator will send a reminder postcard 30 days after the initial mailing.  *Id.* ¶ 2.9.

The Settlement Administrator will mail checks to all Participating Settlement Class Members at the end of the claims period.  *Id.* ¶¶ 1.19, 3.1(iii).  Settlement payments for Eligible Settlement Class Members will be determined by an allocation formula based on the number of weeks they worked during the Relevant Period.  *Id.* ¶ 3.4.

Class Members who do not return executed claim forms will not release any claims.  *Id.* ¶ 4.2.  Class Members who participate will release all FLSA and state-law wage and hour claims arising from their employment as ASMs.  *Id.* ¶ 4.1.  Any unclaimed funds, including any uncashed checks, will revert to Defendant.  *Id.* ¶¶ 3.1(iv), 3.4(iv).  The Settlement Administrator

---

[2]    The Settlement also carves out the plaintiffs in *Carter v. Bed Bath & Beyond, Inc.*, No. MID-L 06178-16 (N.J. Superior Ct.) (a class action under New Jersey law), any ASMs who worked exclusively in New Jersey stores during the Relevant Period, and the eight plaintiffs in *Thomas et al. v. Bed Bath and Beyond, Inc.*, 1:16 Civ. 8160 (S.D.N.Y.).  *Id.* ¶ 1.9.

will send reminders to individuals who have not cashed their checks after 30 days.  *Id.* ¶ 3.4(v).

## III.    Service Awards

With Court approval, the Named Plaintiffs, Przytula and Brede, will each receive $9,500

Service Awards, and the Opt-In Declarants, Temple, Mitchell, Kempner, Dunne, Dykeman,

Forde, Kehoe, Reha, and Popp, will each receive $1,400.  This recognizes their assistance in

vindicating the rights of the approximately 3,150 ASMs who will benefit from the settlement,

and the risks they took as early participants.  *Id.* ¶¶ 1.16, 1.31, 3.3(i); Swartz Decl. ¶¶ 25-27.

## IV.    Settlement Claims Administration

Plaintiffs' Counsel has retained Rust Consulting, Inc. ("Rust"), an experienced settlement

claims administrator, as the Settlement Administrator.  *Id.* ¶ 30.  Courts have routinely approved

Rust as a settlement administrator.  *See* Swartz Decl. ¶ 18.  Rust's fees are capped at $50,000 and

will be paid from the Fund.  Ex. 1 ¶ 1.11; *see also* Swartz Decl. ¶ 18.

## V.    Attorneys' Fees and Expenses

Subject to Court approval, Plaintiffs' Counsel will receive $2,833,333.33 (one-third of

the $8,500,000 settlement) as attorneys' fees, plus reimbursement of $35,917.09, the actual

reasonable out-of-pocket expenses incurred litigating and resolving this matter.  *See* Ex. 1

¶ 3.2(i); Swartz Decl. ¶ 19 & Ex. 3 (Summary of Costs).

## ARGUMENT

## I.    A One-Step Approval Process Is Appropriate.

A one-step approval process is appropriate in a wage and hour settlement that does not

include a class-wide Rule 23 release.  An opt-in settlement, like this one, does not implicate the

due process concerns that a Rule 23 class action settlement implicates because there are no

absent class members whose rights are affected.[3]  The only individuals whose rights are affected are those who affirmatively execute and return a claim form.  Ex. 1 ¶ 4.2.[4]

Accordingly, courts should not impose the same approval process for Rule 23 class action settlements on FLSA settlements.  *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class actions that are not present in FLSA collective actions); *Koszyk*, 2016 WL 5109196, at *1.  There is no need for the settlement to allow opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it.  *See Prena v. BMO Fin. Corp.*, 2015 WL 2344949, at *1; *Woods*, 686 F.2d at 580 ("The difference between a Rule 23 class action and a section 16(b) class action is thus that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

---

[3]     *See, e.g.*, *Bainter v. Akram Investments, LLC*, No. 17 Civ. 7064, 2018 WL 4943884, at *2 (N.D. Ill. Oct. 9, 2018) (finding the "one-step [FLSA] settlement approval process is appropriate"); *Brewer v. Molina Healthcare, Inc.*, No. 16 Civ. 9523, 2018 WL 2966956, at *1 (N.D. Ill. June 12, 2018) (same); *Briggs v. PNC Fin. Servs. Grp. Inc.*, No. 15 Civ. 10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (same); *Koszyk v. Country Fin.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) (same); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *see also Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012); *Blum v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 1636, 2017 WL 8784449 (S.D.N.Y. May 15, 2017); *Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014).

[4]     "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013).  Collective actions under Section 216(b) require workers to affirmatively opt in to the litigation, unlike in a Rule 23 class action. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013); *see also*  Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date."  *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).

**II.    The Settlement Is Fair and Reasonable and Should Be Approved**.

The Seventh Circuit "encourages settlements" in complex matters.  *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).  In the FLSA context, courts must "determine whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) ("*Butler I*") (Mason, M.J.).  If the settlement reflects a reasonable compromise over contested issues, the court should approve it.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982); *Roberts*, 2014 WL 4804252, at *2.  Settlements that follow contested litigation are likely to be approved.  *See, e.g.*, *Lynn's Food Stores*, 679 F.2d at 1355; *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Butler I*, 2011 WL 4729789, at *8-9.

The Settlement meets the standard for approval.  It follows a thorough pre-suit investigation, contested litigation and discovery, and results from substantial arm's-length negotiations.  *See supra* at 1-2.  Recognizing the uncertain legal and factual issues involved, the Parties settled after two all-day sessions with an experienced mediator.  Swartz Decl. ¶ 20.

The $8,500,000 settlement amount is substantial, especially in light of the considerable risk that Plaintiffs faced.  First, the average net settlement award will be approximately $1,750 per person (after fees, service awards, and costs, including settlement administration costs), which is a substantial percentage of the average participant's alleged lost wages.  *Id.* ¶ 21.

Second, there was a risk that Plaintiffs would not succeed on their motion for FLSA notice, or in maintaining a collective through trial.  Defendant would continue to argue that the differences among various stores and other individualized questions precluded certification, or

6

would warrant decertification of a collective. *See* ECF No. 57 (Def.'s Br.) at 14-17 (listing variations among ASMs). Although Plaintiffs disagree, other defendants have prevailed on similar arguments. *See, e.g.*, *Gromek v. Big Lots, Inc.*, No. 10 Civ. 4070, 2010 WL 5313792, at *5 (N.D. Ill. Dec. 17, 2010) (denying FLSA certification of assistant manager claims because "significant differences are present between the job duties of individual[s]"); *see also Beckman*, 293 F.R.D. at 480 (collecting misclassification cases where courts decertified FLSA collectives).

Third, a trial would present significant risks as to liability and damages. The status of ASMs under the FLSA is fact-intensive and uncertain. *See, e.g.*, *Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1007-10 (N.D. Ill. 2010) (dismissing claims of assistant store managers and finding they were properly classified as exempt under Illinois wage and hour laws); *Jackson v. Go-Tane Servs., Inc.*, No. 99 Civ. 5686, 2001 WL 826867, at *3-4 (N.D. Ill. July 18, 2001) (granting summary judgment to employer on claims of certain assistant managers).

The proposed allocation is also reasonable. It is based on the number of weeks worked as an ASM, which is a reasonable approximation of damages. Ex. 1 ¶ 3.4(i)(a)-(b) (allocation plan); *see Summers v. UAL Corp. ESOP Comm.*, No. 03 Civ. 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving allocation plan as reasonable where the funds were "disbursed on a pro rata basis").

The Court should also approve the proposed Settlement Notice and Claim Form. *See* Ex. 1 at Ex. B. The Notice clearly informs Eligible Settlement Class Members of the terms of the settlement, including the allocation formula, how to participate, the payment to which they are entitled, the release, and the request for attorneys' fees and costs. *Id.*; *see also Koszyk*, 2016 WL 5109196, at *2 (approving class notice that, *inter alia*, described settlement terms and fee

allocation); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same). The Claim Form is a straightforward one-page form requiring minimal information. *See* Ex. 1 at Ex. B.

## III.    The Service Awards Should Be Approved as Fair and Reasonable.

The Service Awards that Plaintiffs request are reasonable and should be approved. Individual plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Service awards serve the important purpose of compensating plaintiffs for assisting in the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and other burdens. *See, e.g.*, *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012).[5] "This is especially true in employment litigation." *Castillo v. Noodles & Co.*, No. 16 Civ. 3036, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016).

In evaluating a requested service award, courts consider: (1) the work the plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 Civ. 2898, 09 Civ. 2026, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). Here, Named Plaintiffs and Opt-In Declarants satisfy all three factors.

First, Named Plaintiffs' and Opt-In Declarants' worked for the common good resulted in

---

[5]       *See also Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf. Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing incentive awards' importance). Service awards are commonly awarded to those who serve the class's interests. *Massiah*, 2012 WL 5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011).

a substantial benefit. They provided documents, helped articulate the claims, helped prepare for mediation, participated in discovery, and submitted detailed declarations. Swartz Decl. ¶ 25. Courts routinely approve service awards for similar contributions. *See, e.g.*, *Koszyk*, 2016 WL 5109196, at *3 (approving service awards for assistance early in lawsuit); *Zolkos v. Scriptfleet, Inc.*, 2015 WL 4275540 (N.D. Ill. Jul. 13, 2015), at *3 (same).

Second, Plaintiffs undertook risk. They agreed to bring the action in their names, to be deposed, and to testify if there was a trial. Swartz Decl. ¶ 26. In so doing, they assumed the risk that they would be liable for costs and fees. "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted); *accord Koszyk*, 2016 WL 5109196, at *3. Moreover, Plaintiffs risked reputational harm in the eyes of future employers. Swartz Decl. ¶ 26; *Beesley v. Int'l Paper Co.*, No. 06 Civ. 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (suits against employers carry professional and personal risks).[6]

Third, Plaintiffs spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Class Members. This included helping counsel investigate, assisting with the complaint, and preparing for the mediation. Swartz Decl. ¶ 27; *see Koszyk*, 2016 WL 5109196, at *3.

---

[6]    *See also, Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[e] potential risks of being blacklisted as 'problem' employees."); *see also* Ex. 4 (Hr'g Tr. at 8, *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, (E.D.N.Y. July 30, 2015)) ("I will note that given the rise of the information technology age that we're in [being a plaintiff] is not without risk . . . it's something that stays with you forever."); *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person.").

Courts routinely approve service awards equal to or greater than the awards requested here. *See Koszyk*, 2016 WL 5109196, at *3 ($10,000 service awards for assistance to collective early in lawsuit); *Zolkos*, 2015 WL 4275540, at *3 (service awards of $5,000 and $10,000). The requested Service Awards — $40,000 in total — are also reasonable because they amount to less than 0.5% of the total recovery. Swartz Decl. ¶ 28; *see Butler v. Am. Cable & Tel., LLC*, No. 09 Civ. 5336, 2012 WL 13123576, at *7 (N.D. Ill. Jan. 23, 2012) ("*Butler II*") (Mason, M.J.) (approving awards of approximately 3.2% ); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving awards of approximately 16.6%).

## IV.    The Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.

### A.    The Court Should Use the Percentage of the Fund Method.

The Court should award attorneys' fees as a percentage of the total fund made available to the Class. When counsel's efforts result in the creation of a common fund, counsel is entitled to a reasonable attorney's fee from the fund as a whole. *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-692 (7th Cir. 2007).

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage-of-the-fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994)—the trend in the Seventh Circuit is to use the percentage-of-the-fund method, *see Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014), especially in FLSA matters. *See Campbell*, 2012 WL 1424417, at *2 (FLSA settlement); *see also Koszyk*, 2016 WL 5109196, at *3-4; *Prena*, 2015 WL 2344949, at *1.

The percentage method promotes early resolution, and removes the incentive for

plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). The percentage method also preserves judicial resources because it saves the Court from the task of reviewing billing documents. *See Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (same).[7]

### B. The Benefits Conferred Upon the Class Justify the Fee Award.

This Settlement will provide the participants with substantial cash payments, which they can obtain with little effort. The settlement represents significant value given the attendant risks of litigation. *See supra* at 6; Swartz Decl. ¶¶ 20-24.[8]

The Settlement negotiations were not collusive. They followed contested litigation and involved a well-respected class action employment law mediator. *Id.* ¶¶ 6-12; *see also Long v. HSBC USA Inc.*, No. 14 Civ. 6233, 2015 WL 5444651 (S.D.N.Y Sept. 22, 2015) (approving settlement mediated by Michael D. Young).[9]

---

[7] The Seventh Circuit's opinion in *Pierce v. Visteon Corp.*, 791 F.3d 782 (7th Cir. 2015), has no impact on longstanding Seventh Circuit jurisprudence that in class settlements, class counsel should be awarded a portion of the fund their work creates. In *Pierce*, the Court addressed a unique situation where a lawyer obtained a judgment in his or her client's favor, recovered an attorneys' fee on a lodestar basis that the court found to be a reasonable fee, and then sought a second fee recovery on a percentage-of-the-fund basis. *Id.* at 783-88.

[8] This estimated recovery is made according to the fluctuating work week, pursuant to *Urnikis-Negro v. American Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010).

[9] This case does not present indicia of collusion that would support reducing the fee allocation based on the rate at which class members participate in the settlement. *Cf. Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) (in consumer case, noting the "danger of collusion in class actions between class counsel and the defendant, to the detriment of the class members" and examining the ratio of the fee to the post-claims recovery). Unlike in cases where courts have adopted such safeguards, in this case, no Eligible Settlement Class Members will release claims without affirmatively deciding to join the case. Moreover, there is reason to expect a significant claims rate because the settlement provides significant cash value on an

C.      **An Analysis of the Market For Legal Services Supports Plaintiffs' Request**.

In awarding fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001); *Koszyk*, 2016 WL 5109196, at *3. District courts "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases[.]" *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

1.      **Plaintiffs' Request for One-Third of the Settlement Is the Normal Rate of Compensation in the Northern District of Illinois Market.**

The attorneys' fees that Plaintiffs' Counsel request are based on the market in the Northern District of Illinois. *Id.* at 600 (approving attorneys' fees based on, *inter alia*, "legal hurdles that lead counsel faced in proving liability") (citing *Donovan v. Estate of Frank E. Fitzsimmons,* 778 F.2d 298, 309 (7th Cir. 1985)); *see, e.g., N.P. v. Standard Innovation Corp.*, No. 16 Civ. 8655, 2017 WL 10544061, at *3 (N.D. Ill. July 25, 2017) (Mason, M.J.) ("[C]ourts have held that fees in the range of 25% to 40% of the settlement fund are reasonable, depending on the facts of each case.")), *adopted by*, ECF No. 54 (N.D. Ill. Aug. 15, 2017); *McDaniel v. Qwest Commc'ns Corp.*, No. 05 Civ. 1008, 2011 WL 13257336, at *4 (N.D. Ill. Aug. 29, 2011) ("As decisions of the Seventh Circuit have confirmed, the real-world market range for contingent fee cases is 33% to 40%." ). Plaintiffs' Counsel are nationally recognized for their expertise in

---

individual basis, the notice is straightforward, and the notice plan includes robust efforts to locate Class Members.

litigating complex class and collective actions, including wage and hour cases like this one, and are justified in seeking compensation in the form of one-third of any potential settlement (plus costs) for their efforts.  Swartz Decl. ¶ 4.

Before agreeing to take on this matter, Plaintiffs' Counsel agreed with the Named Plaintiffs to request one-third of any (at that time uncertain) future recovery, plus expenses.  *See Id.* ¶ 29.  This is evidence of what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)," *In re Synthroid Mktg. Ltig.*, 264 F.3d at 718, because the Named Plaintiffs did just that.  *See In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outset of [the] lawsuit"); *see also Koszyk*, 2016 WL 5109196, at *4.

It was reasonable for the Named Plaintiffs to contract for one-third of the settlement fund to be paid to Plaintiffs' Counsel.  In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery.  *See Briggs*, 2016 WL 7018566, at *4; *Koszyk*, 2016 WL 5109196, at *4. In addition, one-third is the standard contingent percentage that employment lawyers in the District charge individual clients.  *Id.*  These multiple data points, confirming that plaintiffs routinely are willing to agree to a one-third contingency fee arrangement, reinforces that Plaintiffs' Counsel request the proper market rate.  *See In re Synthroid*, 325 F.3d at 976.

Courts regularly agree that "a counsel fee of 33.3% of the common fund is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers in an FLSA action."  *Burkholder*, 750 F. Supp. 2d at 997 (quotation marks omitted, collecting cases); *see*

*Briggs*, 2016 WL 7018566, at *4; (approving award of one-third settlement plus costs in wage

and hour litigation); *Koszyk*, 2016 WL 5109196, at *3 (same); *Rusin v. Chicago Tribune Co.*,

No. 12 Civ. 1135, 2013 WL 12377129, at *2 (N.D. Ill. June 26, 2013) (same); *Campbell*, 2012

WL 1424417, at *2 (same).

Here, Plaintiffs' Counsel's requested fee is well within the market rate for common fund

wage and hour actions within the Northern District of Illinois.[10]  *See id.* at 599-600 (noting class

actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund);

*Gaskill v. Gordon*, 160 F.3d 361, 364 (7th Cir. 1998) (affirming award of 38% of fund); *Woods

v. Club Cabaret, Inc.*, No. 15 Civ. 01213, 2017 WL 4054523, at *10 (C.D. Ill. May 17, 2017)

("In Illinois, courts routinely hold that one-third of a common fund is an appropriate attorneys'

fees award in class action settlement, including wage and hour settlements." (quotations and

alterations incorporated, citations omitted)); *Briggs*, 2016 WL 7018566, at *4; (awarding fees as

one-third of fund); *Koszyk*, 2016 WL 5109196, at *4 (same); *In re Dairy Farmers of Am., Inc.*,

80 F. Supp. 3d at 842 (same); *Beatty v. Capital One Fin. Corp.*, No. 12 Civ. 434 (N.D. Ill. Dec.

13, 2012) (Mason, M.J.) (attached as Exhibit 5) (same); *Zolkos v. Scriptfleet, Inc.*, 2015 WL

4275540, at *3 (N.D. Ill. Jul. 13, 2015) (same); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ.

4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the

---

[10]     Courts in this Circuit do not usually engage in a lodestar "cross-check" of plaintiffs'
counsel's fee requests.  *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 n.27 (N.D. Ill.
2011) ("[U]se of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and
potentially counterproductive."); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL
2808801, at *3-4 (N.D. Ill. June 20, 2014) (rejecting plaintiffs' cross-check lodestar but finding
contingency rate reasonable because it was "well within the range of market prices"); *In re Dairy
Farmers of Am., Inc.*, 80 F. Supp. 3d at 849 ("Ultimately, the Court sees no utility in considering
this somewhat-arbitrary (and under-vetted) [lodestar] calculation, and thus disregards this
evidence for purposes of this fee petition."); *see also Williams v. Rohm & Haas Pension Plan*,
658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required
methodology"). However, if helpful to the Court, Plaintiffs can submit lodestar summaries in a
supplemental filing.

percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); *Butler II*, 2012 WL 13123576, at \*5 (awarding fees of 30% of the gross recovery and noting that one-third contingency is common).

### 2. The Risk of Nonpayment Was Significant.

Plaintiffs' Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiffs' Counsel faced. At the outset of the representation, Plaintiffs' Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiffs. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid. Swartz Decl. ¶ 30; *Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Should the Court reject the settlement, Plaintiffs' Counsel also face significant legal hurdles in establishing certification and proving liability. *See* Argument, *supra* § II. These risks include litigating the merits and a potential finding that the ASMs were properly classified by Defendant as exempt. As the Seventh Circuit has noted, Plaintiffs' Counsel "could have lost [and still could lose] everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992); *Koszyk*, 2016 WL 5109196, at \*4.

### CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order substantially in the form of Plaintiffs' Proposed Order attached as Exhibit A to the Settlement Agreement.

Dated:  New York, New York
       January 18, 2019

                                        By: /s/ *Justin M. Swartz*
                                              Justin M. Swartz

                                        **OUTTEN & GOLDEN LLP**
                                        Justin M. Swartz
                                        Michael J. Scimone (admitted *pro hac vice*)
                                        Michael C. Danna (admitted *pro hac vice*)
                                        685 Third Avenue, 25th Floor
                                        New York, New York 10017
                                        Telephone: (212) 245-1000

                                        **SHAVITZ LAW GROUP, P.A.**
                                        Gregg I. Shavitz (admitted *pro hac vice*)
                                        1515 S. Federal Highway, Suite 404
                                        Boca Raton, FL 33432
                                        Telephone: (561) 447-8888

                                        Michael Palitz (admitted *pro hac vice*)
                                        830 Third Avenue, 5th Floor
                                        New York, NY 10022
                                        Telephone: (800) 616-4000

                                        **SHULMAN KESSLER LLP**
                                        Troy L. Kessler (admitted *pro hac vice*)
                                        534 Broadhollow Road, Suite 275
                                        Melville, NY 11747
                                        Telephone: (631) 499-9100

                                        *Attorneys for Plaintiffs and the Proposed FLSA*
                                        *Collective*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 18, 2019, the above document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

 */s/ Justin M. Swartz*
Justin M. Swartz

17