THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| MARY PRZYTULA and BRAD BREDE, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br> v.<br><br>BED BATH & BEYOND, INC.,<br><br>       Defendant. | Case No. 1:17-cv-05124 (MTM) |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF
PLAINTIFFS' MOTION FOR COURT-AUTHORIZED NOTICE
PURSUANT TO SECTION 216(b) OF THE FAIR LABOR STANDARDS ACT**

I, Justin M. Swartz, pursuant to 28 U.S.C. § 1746, declare as follows:

  1.  I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiffs' counsel herein, and co-chair of its Class Action Practice Group. Along with lawyers from Shavitz Law Group, P.A. and Shulman Kessler LLP, I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the proposed collective.

  2.  I am an attorney in good standing admitted to practice in the State of Illinois, the State of New York, and before this Court.

  3.  I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**Class Counsel's Background and Experience**

  4.  O&G is experienced and nationally recognized for its expertise in litigating complex class actions, including wage and hour cases like this one. *See, e.g.*, *Straunch v. Computer Science Corp.*, 322 F.R.D. 157, No. 14 Civ. 956, 2017 WL 2829652, at *24 n.15 (D.

Conn. June 30, 2017) (in wage and hour litigation, finding that O&G "adequately represent[s] the interests of the putative class"), *motion to decertify denied*, 2017 WL 4683993 (D. Conn. Oct. 18, 2017); *Walsh v. CorePower Yoga LLC*, No. 16 Civ. 5610, 2017 WL 589199, at *8 (N.D. Cal. Feb. 14, 2017) (O&G has "a proven track record in the prosecution of class actions as they have successfully litigated and tried many major class action cases"); *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160, 2016 WL 3221148, at *1 (S.D.N.Y. June 9, 2016) (denying motion to decertify class and collective of assistant store managers); *Briggs v. PNC Financial Services Group, Inc.*, No. 15 Civ. 10446, 2016 WL 1043429 (N.D. Ill. Mar. 16, 2016) (certifying collective of nationwide assistant managers); *Watson v. Jimmy John's, LLC*, No. 15 Civ. 6010, 2015 WL 7180516, at *1 (N.D. Ill. Nov. 13, 2015) (certifying collective of nationwide assistant managers); *Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740, 2015 WL 260436, at *1 (S.D.N.Y. Jan. 20, 2015) (certifying collective of nationwide tipped workers); *Ballinger v. Advance Magazine Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *7 (S.D.N.Y. Dec. 29, 2014) (appointing O&G as class counsel, explaining that "[b]ased on the firm's performance before [the court] in this and other cases and its work in the foregoing and other cases, [the court has] no question that it will prosecute the interests of the class vigorously."); *Beckman*, 293 F.R.D. at 477 (noting that O&G "are experienced employment lawyers with good reputations among the employment law bar"); *Yuzary v. HSBC USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *4 (S.D.N.Y. Apr. 30, 2013) (appointing O&G as class counsel); *Capsolas*, 2012 WL 1656920, at *2 (appointing O&G as class counsel and noting O&G attorneys "have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622 (S.D.N.Y. 2012) (O&G attorneys "have substantial experience prosecuting wage and hour and

other employment-based class and collective actions."); *Johnson*, 2011 WL 1872405, at *2 (May 17, 2011) (appointing O&G as class counsel); *McMahon*, 2010 WL 2399328, at *6 (O&G "are experienced employment lawyers with good reputations among the employment law bar . . . [and] have prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Damassia*, 250 F.R.D. at 158 (O&G lawyers have "an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area").

5. I am a partner of O&G and co-chair of its Class Action Practice Group. I received my J.D. from DePaul University School of Law in 1998 with honors and since then I have exclusively represented plaintiffs in employment litigation and other employee rights matters. I was admitted to the bar of the State of Illinois in 1998 and the bar of the State of New York in 2002. I am active in bar associations and have held many leadership roles including the following, among others: American Bar Association Section on Labor and Employment Law, Co-Chair of Equal Employment Opportunity Committee (2013-2015); Co-Chair Ethics and Professional Responsibility Committee (2006 through 2009); New York City Bar Association, Civil Rights Committee (2005 through 2008); Committee on Labor and Employment Law (September 2002 through June 2005); National Employment Lawyers Association ("NELA"), co-chair of national Wage and Hour Practice Group (2010 through 2016); NELA - New York Chapter, Executive Board Member (2006 through 2012); and New York University Center for Labor and Employment Law, Advisory Board Member (2007 through present). I speak frequently on employment law issues, including wage and hour issues.

3

**Overview of Investigation, Litigation, and Settlement Negotiations**

6. Plaintiffs are former employees of Defendant who worked as assistant managers ("ASMs") at Defendant's retail stores throughout the United States.

7. In a letter dated February 17, 2017, Plaintiffs' Counsel informed Defendant of Plaintiffs' allegations and of their intent to litigate if a pre-litigation settlement could not be reached. Defendant declined to negotiate.

8. Before initiating this action, Plaintiffs' Counsel thoroughly investigated and researched the claims and defenses, including various theories of liability, measures of damages, and certification issues. This included reviewing publicly available information and interviewing ASMs from several states.

9. On July 11, 2017, Plaintiffs filed their Complaint on behalf of ASMs nationwide under the FLSA and Illinois and New York state labor laws. On November 7, 2017, Plaintiffs filed a motion for court-authorized notice pursuant to Section 216(b) of the FLSA. As of January 9, 2018, the motion was fully briefed. Meanwhile, the Parties engaged in discovery. Defendant moved to compel certain depositions but the Court rejected this request. Plaintiffs served discovery demands on October 13, 2017 and obtained and reviewed responsive information, including voluminous ESI. The Parties engaged in approximately nine discovery meet and confers and attended several status conferences.

10. In the spring of 2018, while Plaintiffs' 216(b) motion was pending, the parties agreed to attend private mediation with Michael D. Young, a well-regarded, experienced mediator on August 22, 2017.

11. As part of the mediation process, Defendant produced additional, targeted class-wide discovery and data showing the number of potential class members in the job title, salaries,

and weeks worked, which Plaintiffs' Counsel analyzed to construct a damages model. The Parties also drafted and submitted detailed mediation statements.

12. The August 22, 2017 mediation session did not resolve the case, but the parties agreed to continue negotiating with the mediator's assistance. After continued negotiations and a second mediation session on October 23, 2017, the parties reached an agreement in principle. Thereafter, the parties finalized the terms of the Settlement, which were memorialized in formal Settlement Agreement on January 18, 2019.

### Settlement Terms

13. The Settlement Agreement establishes a fund of $8,500,000.00 ("Fund") from which Class Members may claim settlement awards. The Fund covers any Court-approved Service Awards, attorneys' fees and expenses, Settlement Administrator's fees, payroll taxes, and class member awards. Ex. 1 ¶¶ 1.12, 1.8, 3.1(i). All current and former ASMs other than those ASMs who worked exclusively in New Jersey stores are Eligible Settlement Class Members. *Id.* ¶¶ 1.9.

14. The parties negotiated a simple claims process with no barriers to participation. The Settlement Administrator will mail a plain language notice and a simple claim form to all Eligible Settlement Class Members, informing them of the claims, the settlement terms, their individual settlement allocations, the release, and their right to participate. Eligible Settlement Class Members will have 60 days to submit claim forms (45 days after a re-mailing). *Id.* ¶ 1.4. The Settlement Administrator will send reminder postcards 30 days and 45 days after the initial mailing. *Id.* ¶ 2.9.

15. The Settlement Administrator will mail checks to all Participating Settlement Class Members at the end of the claims period. *Id.* ¶¶ 1.19, 3.1(iii). Settlement payments for

Eligible Settlement Class Members will be determined by an allocation formula based on the number of weeks they worked during the Relevant Period. *Id*. ¶ 3.4.

16. Class Members who do not return executed claim forms will not release any claims. *Id.* ¶ 4.2. Class Members who participate will release all FLSA and state-law wage and hour claims arising from their employment as AMs. *Id.* ¶ 4.1. Any unclaimed funds, including any uncashed settlement checks, will revert to Defendant. *Id*. ¶¶ 3.1(iv), 3.4(iv). The Settlement Administrator will send reminders to individuals who have not cashed their checks after 30 days. *Id*. ¶ 3.4(v).

17. With Court approval, the Named Plaintiffs, Przytula and Brede will each receive $9,500 Service Awards, and the Opt-In Declarants, Temple, Mitchell, Kempner, Dunne, Dykeman, Forde, Kehoe, Reha, and Popp, will each receive $1,400. This recognizes their assistance in vindicating the rights of the more than 3,150 ASMs who will benefit from the settlement, and the risks they took as early participants. *Id*. ¶¶ 1.16, 1.31, 3.3(i).

18. The Parties have retained Rust Consulting, Inc. ("Rust"), an experienced settlement claims administrator, as the Settlement Administrator. *Id.* ¶ 30. Courts have routinely approved Rust as a settlement administrator. Rust's fees are capped at $50,000 and will be paid from the Fund. *Id.* ¶ 1.11.

19. Subject to Court approval, Plaintiffs' Counsel will receive $2,833,333.33 (one-third of the $8,500,000 settlement) as attorneys' fees, plus reimbursement of $35,917.09, the actual reasonable out-of-pocket expenses incurred litigating and resolving this matter.

**The Settlement Is Fair and Reasonable**

20. The Settlement meets the standard for approval. It follows a thorough pre-suit investigation, contested litigation and discovery, and results from substantial arm's-length

negotiations. Recognizing the uncertain legal and factual issues involved, the Parties settled after two all-day sessions with an experienced mediator.

21. The $8,500,000 settlement amount is substantial, especially in light of the considerable risk that Plaintiffs faced. First, the average net settlement award will be approximately $1,750 per person (after fees, service awards, and costs, including settlement administration costs), which is a substantial percentage of the average participant's alleged lost wages.

22. Second, there was a risk that Plaintiffs would not succeed on their motion for FLSA notice, or in maintaining a collective through trial. Defendant would continue to argue that the differences among various stores and other individualized questions precluded certification, or would warrant decertification of a collective. Although Plaintiffs disagree, other defendants have prevailed on similar arguments.

23. Third, a trial would present significant risks as to liability and damages. The status of ASMs under the FLSA is fact-intensive and uncertain.

24. The proposed allocation is also reasonable. It is based on the number of weeks worked as an ASM, which is a reasonable approximation of damages.

### Service Payments

25. Named Plaintiffs' and Opt-In Declarants' work for the common good resulted in a substantial benefit. They provided documents, helped articulate the claims, helped prepare for mediation, participated in discovery, and submitted detailed declarations.

26. Plaintiffs undertook risk. They agreed to bring the action in their names, to be deposed, and to testify if there was a trial. In so doing, they assumed the risk that they would be

liable for costs and fees. Moreover, Plaintiffs risked reputational harm in the eyes of future employers.

27. Third, Plaintiffs spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Class Members. This included helping counsel investigate, assisting with the complaint, and preparing for the mediation.

28. The requested Service Awards — $40,000 in total — are also reasonable because they amount to less than 0.5% of the total recovery.

## Attorneys' Fees and Costs

29. Before agreeing to take on this matter, Plaintiffs' Counsel agreed with the Named Plaintiffs to request one-third of any (at that time uncertain) future recovery, plus expenses.

30. Plaintiffs' Counsel's decision to charge the market rate is also reasonable in light of the significant risks of nonpayment that Plaintiffs' Counsel faced. Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid.

## Exhibits

31. Attached as Exhibit 1 is a true and correct copy of the Joint Stipulation of Settlement and Release, executed on January 18, 2019.

32. Attached as Exhibit 2 is a Glossary of Terms.

33. Attached as Exhibit 3 is a summary of Plaintiffs' Counsel's costs and expenses.

34. Attached as Exhibit 4 is true and correct copy of the hearing transcript from *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 00637 (E.D.N.Y.), dated July 30, 2015.

35. Attached as Exhibit 5 is true and correct copy of the Final Judgment and Order Approving Settlement and Dismissing Action in in *Beatty v. Capital One Fin. Corp.*, No. 12 Civ. 434 (N.D. Ill. Dec. 13, 2012) (Mason, M.J.).

\* \* \*

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: January 18, 2019
New York, New York            Respectfully submitted,

*/s/ Justin M. Swartz*
**OUTTEN & GOLDEN LLP**
Justin M. Swartz
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
*Attorney for Plaintiffs and the Putative Class and Collective*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2019, the above document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                 */s/ Justin M. Swartz*
                                                 Justin M. Swartz